1

2

3

4

5

6                              UNITED STATES DISTRICT COURT
                              WESTERN DISTRICT OF WASHINGTON
7                                        AT SEATTLE

8       TOLLE FURNITURE GROUP, LLC,

9                  Plaintiff,

10            v.                                    Case No.  C09-0889RSL

11      LA-Z-BOY INCORPORATED,                      ORDER DENYING MOTION FOR
                                                    A TEMPORARY RESTRAINING
12                 Defendant.                       ORDER

13

14

15                              **I.  INTRODUCTION**

16          This matter comes before the Court on a motion for a temporary restraining order

17    filed by plaintiff Tolle Furniture Group, LLC ("Tolle") to prevent defendant from

18    terminating its Galleries Retailer Agreements on July 21, 2009.  The parties entered into

19    the agreements to permit Tolle to sell defendant's products, which it does through five

20    showrooms throughout the Puget Sound region.

21          For the reasons set forth below, the Court denies the motion.

22                              **II.  DISCUSSION**

23    **A.     Background Facts.**

24          Defendant La-Z-Boy ("LZB") is the world's largest manufacturer of recliners.

25
      ORDER DENYING MOTION FOR A
26    TEMPORARY RESTRAINING ORDER - 1

1  Tolle has operated a LZB gallery store since 2000.

2      In 2004, LZB and Tolle discussed the possibility of Tolle taking over and

3  consolidating underperforming LZB stores in the Seattle area. Based on LZB's alleged

4  representations, Tolle sold its LZB store in Wichita, Kansas, and Tolle's owners, Andrew

5  and Barbara Spotts, moved their family to the Seattle area. Tolle acquired existing stores

6  in Tacoma, Tukwila, and Issaquah. In 2006, Tolle opened new stores in Lynnwood and

7  Silverdale. Tolle relocated the Tukwila store to a new and much larger showroom.

8      Pursuant to the Retailer Agreements, Tolle orders products from LZB at wholesale

9  prices, LZB ships the product, then Tolle pays the invoiced amount by the stated due date.

10  Declaration of Paulette Roberts, (Dkt. #17) ("Roberts Decl.") at ¶ 5. Tolle contends that

11  its start-up costs and costs associated with building out the new stores caused its account

12  with LZB to grow to nearly $6 million after all of the stores were completed. Declaration

13  of Andrew Spotts, (Dkt. #11) ("A. Spotts Decl.") at ¶ 15. LZB notes that Tolle's

14  accounts receivables balance as of June 28, 2009 is just over $6 million, and the past-due

15  balance is approximately $5.1 million. All of the past due amounts "are for product that

16  Tolle ordered and received, but never paid for." Roberts Decl. at ¶ 6.

17      On June 11, 2009, LZB notified Tolle that over $4 million on its account was past

18  due and that Tolle was in default under its Retailer Agreements. A. Spotts Decl., Ex. C.

19  The notice requested payment of over $4 million. Despite informal efforts to resolve the

20  dispute, the parties have been unable to reach an agreement.

21      Plaintiff argues that it is entitled to an injunction because (1) LZB previously

22  agreed to allow Tolle to defer payment of its debt, and (2) the relationship between the

23  parties is a franchise under Washington law. If the relationship is a franchise, then any

24  attempt to terminate it must be done in compliance with Washington's Franchise

25

26  ORDER DENYING MOTION FOR A
    TEMPORARY RESTRAINING ORDER - 2

1  Investment Protection Act ("FIPA"), RCW 19.100 *et seq*.  Plaintiff contends that LZB has

2  not complied with FIPA's provisions.

3  **B.      Analysis.**

4        The Supreme Court recently explained, "A plaintiff seeking a preliminary

5  injunction must establish that he is likely to succeed on the merits, that he is likely to

6  suffer irreparable harm in the absence of preliminary relief, that the balance of equities

7  tips in his favor, and that an injunction is in the public interest."  Winter v. Natural Res.

8  Def. Council, Inc., __ U.S. __, 129 S. Ct. 365, 374 (2008).  Following *Winter*, the Ninth

9  Circuit has explained, "To the extent that our cases have suggested a lesser standard, they

10  are no longer controlling, or even viable."  American Trucking Associations, Inc. v. City

11  of Los Angeles, 559 F.3d 1046 at *14-15 (9th Cir. 2009).

12        **1.      Likelihood of Success on the Merits.**

13        Plaintiff contends that it is likely to succeed on the merits of its claim because

14  defendant has not complied with the FIPA.  Even assuming that the FIPA applies,

15  plaintiff has not shown a likelihood of success.  First, the FIPA permits a franchisor to

16  terminate a franchise for "good cause:"

17        Good cause shall include, without limitation, the failure of the franchisee to
          comply with lawful material provisions of the franchise or other agreement
18        between the franchisor and the franchisee and to cure such default after being
          given written notice thereof and a reasonable opportunity, which in no event need
19        be more than thirty days, to cure such default, or if such default cannot reasonably
          be cured within thirty days, the failure of the franchisee to initiate within thirty
20        days substantial and continuing action to cure such default: PROVIDED, That
          after three willful and material breaches of the same term of the franchise
21        agreement occurring within a twelve-month period, for which the franchisee has
          been given notice and an opportunity to cure as provided in this subsection, the
22        franchisor may terminate the agreement upon any subsequent willful and material
          breach of the same term within the twelve-month period without providing notice
23        or opportunity to cure:

24  RCW 19.100.180(2)(j).  Plaintiff does not dispute that it has over $5 million in past-due

25

26  ORDER DENYING MOTION FOR A
    TEMPORARY RESTRAINING ORDER - 3

1    invoices owed to LZB. Therefore, it has failed to comply with Section 10.2(a) of the

2    Retailer Agreement, which addresses the failure to pay monies due. Despite that

3    provision and the size of its debt, plaintiff contends that good cause is lacking because it

4    had an agreement with LZB to defer payment of its debt. Specifically, plaintiff contends

5    that LZB promised to "financially support a build-out of the Seattle Market to all New

6    Generation Gallery Stores." Declaration of Barbara Spotts, (Dkt. #10) at ¶ 4. Plaintiff

7    apparently believed that it could repay its debt to LZB from store profits once they were

8    generated. Motion at p. 6 (citing A. Spotts Decl. at ¶ 10, Ex. E); see also A. Spotts Decl.

9    at ¶ 20 ("At the time that Tolle entered the [Seattle] market, LZB and Tolle agreed that

10   the parties would work together to build out the Seattle market and invest capital to gain

11   market share and voice, as well as open new stores . . . . LZB would then have a

12   preferred right to all profits generated by the stores until the capital expenses were

13   paid."). However, that understanding was not based on any written agreement. Nor has

14   plaintiff shown that any oral agreement is enforceable. Plaintiff does not state how long

15   LZB was expected to shoulder the debt. Plaintiff's description of the conduct and

16   conversations that underlie plaintiff's assumption is vague. Furthermore, the alleged

17   conversations occurred before plaintiff executed the Retailer Agreements. None of the

18   Retailer Agreements includes a term that supports plaintiff's assertion. To the contrary,

19   they all contain merger clauses. A. Spotts Decl., Ex. A at § 11.11 ("There are no

20   representations, undertakings, agreements, terms or conditions not contained or referred

21   to herein."). Moreover, when Tolle planned to enter the Seattle market, Andrew Spotts

22   sent LZB a letter detailing Tolle's "funding sources for both capital and building funds."

23   Declaration of Greg White, (Dkt. #16). Neither the letter nor its attachments referenced

24   LZB as a funding source, nor did they reference any agreement to defer payments. In

25

26   ORDER DENYING MOTION FOR A
     TEMPORARY RESTRAINING ORDER - 4

1    2008, LZB twice wrote to Tolle referencing the millions of dollars past due; plaintiff did

2    not contest the amounts past due.[1] All of this evidence shows that plaintiff is not likely to

3    prevail on its claim that the parties agreed to defer payment of the debt.

4         Second, plaintiff's argument that LZB violated the FIPA is premised on the faulty

5    assertion that defendant was required to give plaintiff three notices of its breach before

6    terminating the relationship. The statute, however, states that the franchisor may

7    terminate the relationship without notice after "three willful and material breaches of the

8    same term of the franchise agreement occurring within a twelve month period." RCW

9    19.100.180(2)(j). However, in this case, LZB is not attempting to terminate without

10   notice. In fact, it gave the required notice. The statute requires that the franchisor

11   provide "written notice [of default] and a reasonable opportunity, which in no event need

12   be more than thirty days, to cure such default." Id. Plaintiff has had more than thirty

13   days to attempt to cure its debt, but it has not taken any steps to do so after receiving the

14   notice. Nor has it described any steps it plans to take or could take to cure the debt.

15   Instead, plaintiff described cure measures it attempted around October 2008, and its

16   owners have explained that they unsuccessfully sought additional funding from LZB.

17   None of those efforts reflects a current and viable plan to mitigate plaintiff's significant

18   debt. Accordingly, plaintiff has not shown a likelihood of success on the merits.

19   Nevertheless, the Court will evaluate the remainder of the factors.

20

21

22        [1] Tolle also contends that LZB is "making an opportunistic attempt to take the
Seattle Market from Tolle." Motion at p. 3. However, plaintiff has not cited any

23   evidence in support of that assertion. Plaintiff also contends that some of the debt reflects
"a substantial increase in illegal and impermissible costs due to Tolle losing its ability to

24   utilize independent freight haulers." Motion at p. 22. Even if plaintiff's allegations were
true, the excess costs comprise only a portion of the debt.

25

26   ORDER DENYING MOTION FOR A
TEMPORARY RESTRAINING ORDER - 5

**2.      Likelihood of Irreparable Injury.**

Plaintiff must also show a likelihood of "irreparable injury" in the absence of injunctive relief, which includes injuries that cannot be fairly compensated by monetary damages or other forms of relief available at law. See, e.g., Winter, 129 S. Ct. at 374; eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (explaining that plaintiff "must demonstrate . . . that remedies available at law, such as monetary damages, are inadequate to compensate for that [irreparable] injury"); Rent-a-Center v. Canyon Television & Appliance, 944 F.2d 597, 603 (9th Cir. 1991). Plaintiff contends that absent an injunction, "its individual owners, its 43 employees, and its creditors" will be irreparably harmed "by forcing Tolle's five stores out of business by the end of the month. Deprived by LZB of a means to generate revenue, Tolle will default on its leases, be forced to terminate all employees, and its individual owners, who have contributed in excess of $10,000,000 of capital and who personally guarantee over $25,000,000 on the leases, [will be forced] to file for personal bankruptcy." Motion at p. 1. The Court is very sympathetic to the potential loss of a family business and of jobs, particularly in these difficult economic times. However, plaintiff has not explained why it could not contract to sell other furniture out of its existing showrooms, thereby preserving jobs and plaintiff's investment. Accordingly, plaintiff has not shown a likelihood of irreparable harm.

**3.      The Public's Interest and the Balance of Equities.**

Finally, plaintiff must show that the balance of equities tips in its favor, and that an injunction is in the public interest. See, e.g., Winter, 129 S. Ct. at 374. In making this determination, the Court must determine whether the public interest favors the moving or nonmoving party. See Sammartano v. First Judicial Dist. Court in & for the County of

1  Carson City, 303 F.3d 959, 974 (9th Cir. 2002). In this case, the public has an interest in

2  the continued employment of Tolle's employees, but as set forth above, it is not clear that

3  they will be discharged absent an injunction. Furthermore, the Court is loathe to require

4  parties to continue a business relationship that is not working. LZB has had to carry a

5  significant amount of debt for months, and there is no clear prospect for improvement.

6  LZB is also understandably concerned about the damage to its brand name that could

7  occur if Tolle continues to operate LZB stores that have an insufficient amount of product

8  for display and sale, and inordinately lengthy wait times to fulfill orders. Declaration of

9  Kurt Darrow, (Dkt. #18) at ¶ 16. Accordingly, plaintiff has not shown that the balance of

10  equities tips in its favor or that an injunction is in the public interest.

### III. CONCLUSION

12  For all of the foregoing reasons, the Court DENIES the motion for a TRO (Dkt.

13  #8).

15  DATED this 17th day of July, 2009.

Robert S. Lasnik
United States District Judge